Bufford *v.* Sides.

## BUFFORD *v.* SIDES.

Trustees who are indebted to the principal defendant upon a promissory note, and who have given a mortgage of personal property to secure such note, can not be charged for the specific property thus mortgaged by them to the principal defendant.

Nor will it make any difference in the result, should the trustee, after service of the plaintiff's writ upon him, pay the whole note to the defendant, or should he and the defendant fraudulently agree that the note and mortgage should be given up to the trustee to be canceled without pay or by his paying a portion of the note; these acts, all being fraudulent as to the plaintiff and void so far as they affect his rights and interests, the trustee would be charged as before.

And if any arrangement is made between the trustee and defendant after service of process on the trustee, by which such note and mortgage are given up to the trustee, whether fully paid or otherwise, this will not make the trustee chargeable for the note and mortgage, nor authorize the appointment of a receiver, nor give the plaintiff any lien upon the property mortgaged.

FOREIGN ATTACHMENT, writ dated January 5, and served January 9, 1858. Charles H. Sides and Jenness were summoned as partners, and Jenness also as an individual.

---

Bufford *v.* Sides.

---

The trustees disclosed as follows : " INT. 1. Had you, at the time of the service of the plaintiffs' writ aforesaid, upon you, or since, any money, goods, chattels, rights or credits of the said William O. Sides in your hands or possession ?

" ANSWER. Neither Sides & Jenness, nor William B. Jenness, had, unless said partnership or William B. Jenness are held chargeable under the following circumstances : About the month of November, A. D. 1857, there was a partnership, composed of Charles H. Sides and William O. Sides ; Charles H. and William O. Sides owed the firm of William Fernald, Jr., & Son, certain notes, secured by a mortgage on certain personal property, consisting principally of horses, carriages and harnesses. One of the notes to the firm of William Fernald, Jr., & Son, according to its tenor was payable in December, 1857. William O. Sides was also possessed, in his own right, of nine horses, three phaetons, one chaise, three wagons, one barouch, four single harnesses and two double harnesses ; none of which were included in said mortgage to Fernald & Son.

William B. Jenness proposed to buy out the interest of William O. Sides in said partnership, and to form a new partnership with Charles H. Sides and William B. Jenness, under the firm name of Sides & Jenness. This could not be done without the consent of William Fernald, Jr., & Son, according to a lease between William Fernald, Jr., & Son, and Charles H. and William O. Sides.

William Fernald, Jr., & Son, on being seen, consented to the same, provided William B. Jenness would indorse the notes of Charles H. and William O. Sides to Fernald & Son, on the back thereof; and agreed, if he would so indorse, they, William Fernald, Jr., & Son, would wait for the pay of the note, due in December, A. D. 1857, until May, A. D. 1858, and would not require payment

before that time, of the same. Accordingly, it was so agreed, and Jenness bought out William O. Sides, and indorsed said note as agreed, and Sides and Jenness made a partnership, under the firm name of Sides & Jenness, and said partnership of Sides & Jenness bought for said partnership, of William O. Sides, all said property belonging to William O. Sides, set forth aforesaid, and gave their joint and several note therefor, secured by a mortgage on all said property; said note being intended for a partnership note, and to be paid by said partnership of Sides & Jenness.

The note was dated November 5, A. D. 1857, and was payable to said William O. Sides, or his order, for the sum of eleven hundred dollars, payable on demand with interest, signed by Charles H. Sides and William B. Jenness, and secured by a mortgage on all the property enumerated aforesaid, by a mortgage to William O. Sides, dated November 5, A. D. 1857, and duly sworn to, acknowledged and recorded the same day. Sides & Jenness were in partnership in the livery stable business, and said property was purchased for said partnership, and used by them, and to be paid for by said partnership.

William O. Sides and Charles H. Sides gave to Fernald also a note for about two hundred dollars, on which Jenness was not held in any way.

In the month of December William Fernald, Jr., & Son commenced suits on said note, due by its tenor in December, 1857, on which they had agreed to wait, as aforesaid, until May, A. D. 1858, bringing an action against William B. Jenness, as indorser of said note, and another action against William O. Sides and Charles H. Sides, on said note due in December, and also on said two hundred dollar note. The writs were put into the hands of Joseph P. Morse, deputy sheriff, for service. The partnership of Sides & Jenness were not held on either of said notes sued, as partners, and Jenness was only held as indor-

ser as aforesaid; nor was that due, nor was Jenness liable to pay until May, 1858, if the agreement was valid.

All said property was then in the possession of Sides & Jenness, in use by them, and had never been claimed or demanded of them in any way by William O. Sides, nor had William O. Sides demanded payment of his note, and it was agreed and understood that William O. Sides was not to be paid till Fernald's notes were, and Sides & Jenness were to keep possession of said property, and use the same. The said Morse, sheriff as aforesaid, having said writs, and having no writ against the firm of Sides & Jenness, attached all said property belonging to the firm of Sides & Jenness, which was mortgaged as aforesaid to William O. Sides. On which of said writs said attachment was made is not known to us, but we are informed it was attached as the property of William O. Sides. Morse took said property out of the possession of Sides & Jenness, against their will and against their remonstrance, and Morse was notified to return the same to them.

Morse forcibly took said property away from Sides & Jenness before the first of January, 1858. On the ninth day of January, 1858, we were served with the writ in this action in which this disclosure is made. On the 11th day of January, 1858, William O. Sides having demanded said property of Morse, on his said mortgage, and Morse having declined to deliver the same to him, William O. Sides commenced an action against Morse, to recover the value of said property. Afterward, on or about the twenty-sixth day of January, A. D. 1858, the firm of Sides & Jenness, and William Fernald & Son, and William O. Sides met together to settle said matters, and it was finally agreed that William Fernald, Jr., & Son should pay to William O. Sides, for all his interest in said note and mortgage, he then holding the same, the sum of eight hundred dollars, and the cost of his said suit; that

on said payment William O. Sides should give up said note and mortgage to Sides & Jenness; that said Charles H. Sides should sell and assign to said William B. Jenness all his right, title and interest in and to said partnership property, without any other consideration than the agreement of William B. Jenness, that he would pay all the debts contracted by Sides and Jenness; and it was accordingly so done.

The eleven hundred dollar note of Sides & Jenness, and the mortgage securing the same, was delivered up to Sides & Jenness by William O. Sides, and William Fernald, Jr., & Son, paid William O. Sides the sum of eight hundred dollars, and Charles H. Sides made a bill of sale of all his interest to William B. Jenness, and William B. Jenness, then, the same day, made all said property over to William Fernald, Jr., & Son, that remained of the property of Sides & Jenness.

There was then remaining unsold of the property attached by Morse, belonging to the firm of Sides & Jenness, and mortgaged to William O. Sides, as aforesaid, the following property: to wit, three phaetons, of the value of about ninety dollars each; three wagons of the value of sixty dollars each; one barouch, of the value of one hundred dollars; four single harnesses, of the value of eighteen dollars each; and two sets of double harness, of the value of forty and twenty-five dollars a set. The rest of the property attached had been sold by Morse about January 8.

Charles H. Sides billed to me his interest in all the same, and I billed the same to said Fernald, Jr., & Son; and of said mortgaged property there is now in the possession of William Fernald, Jr., & Son, said three phaetons, wagons and barouch, and three of said four single harnesses, and said two sets of double harness.

At the time of the service of this process said note of $1100, and said mortgage to William O. Sides, were in

the possession of William O. Sides, and were in his possession at the time of settlement aforesaid, and belonged to William O. Sides as he said. Said note to William O. Sides and said mortgage are now destroyed.

Said Charles H. Sides and said William B. Jenness have no private means of their own which are attachable."

The foregoing disclosure was duly signed and sworn to. The principal defendant being summoned in to answer interrogatories, deposed that he had transferred the $1100 note mentioned in the disclosure to one N. B. Sides; but an affidavit of N. B. Sides was produced, stating that that note had not been transferred to him and that he had no interest in it.

An order of notice in the usual form, to all persons claiming that note was duly published. A similar notice to Fernald & Son, was duly served upon them, but they did not appear.

At January term, 1860, the following entry was made on the docket by order of the court: "Trustee charged for note and mortgage disclosed. S. H. Goodall, receiver, to receive property and collect note disclosed."

At the April term, 1860, the receiver made the following report in the case:

"S. H. Goodall, the receiver, appointed by the court, makes report to said court as follows: That on the 18th day of March, A. D. 1860, he called upon William S. Hadley and one Moses H. Tilton, in whose possession was a portion of said property secured by the note and mortgage disclosed: to wit, one racking mare, so called, one white lined chaise, and one blue lined covered buggy; that he demanded said property of said Hadley and Tilton, as such receiver, in pursuance of his authority from said court, and said mare, chaise and buggy were delivered to said Goodall, as such receiver; and that said receiver then contracted for the keep of said horse, chaise and buggy until order for sale could be made by said

court, and said receiver now reports that he has said chaise, buggy and mare in his possession, subject to the order of said court.

S. H. GOODALL, *Receiver.*"

At the same term the following motion was made :

" The plaintiffs move the court that the property taken possession of by the receiver, S. H. Goodall, be disposed of at public auction, or otherwise under the direction of this court, to pay the claim of the plaintiffs, and their costs and damages, and the costs of taking possession, and keeping said property by the receiver, and the balance, if any, to be returned to the person or persons legally entitled thereto, as the court shall direct ; said property so taken possession of under said note and mortgage, consisting of a racking mare, so called ; one white lined chaise, and one four wheeled blue lined covered buggy.

It was suggested to the court that notice should be given to persons claiming property in the hands of the receiver, and to persons claiming all the property mortgaged by the trustees to the defendant, and the question was raised whether the trustees could be charged for the property mortgaged by them to the defendant. And that question was reserved for the determination of the whole court.

*Trustees, pro se.*

*Goodall,* for the plaintiffs.

Suppose, for sake of the argument, it is granted that at the time of the service of the process the things were not in such a situation that the trustee process could reach the identical property if it remained just as it was. But suppose that after the service of the process the trustees actually got full possession of a note unpaid as against creditors, and possession of property pledged to pay that

note. Do not sections 15 and 16 of chapter 208, Revised Statutes, reach just such a case ? The disclosure shows that that note was in hands of trustees, unpaid as to $300 of it; that the property mortgaged was all also put into the hands of the trustee, William B. Jenness. Both the note unpaid and the property of course subject to such unpaid note were in the hands of the trustees or one of them, both of them well knowing the note was not paid. It also appears that the mortgage was put into their hands at the same time, which was a promise for the delivery of property on such note unpaid. It can make no difference that the trustees are promisors on said note. They did have, as the disclosure shows, and still have in law (for they say they destroyed said note and mortgage) the possession of a note and mortgage belonging to the principal defendant in law, for the note was unpaid and the mortgage undischarged in law. Here the trustees were in possession, one or both, of the note, property and mortgage. We say then (1) That the trustee process constitutes a lien upon the property reached by the process, by which the property is held the same as by an attachment of the property itself; *Burlingame* v. *Bell*, 15 Mass. 16 Mass. 318; *Platt* v. *Brown*, 16 Pick. 553; *Rockwood* v. *Varnum*, 17 Pick. 289. Our statute reads: Attach the goods in the hands of the trustee; not to attach the trustees' personal responsibility. (2) An attaching creditor stands in the light of a purchaser. 10 U. S. Dig., Attachment, 41. (3) An attachment holds a part of a note according to its terms, notwithstanding a sale of a part. 14 U. S. Dig., Trustee Process, 31. (4) The acts of the defendant trustees amount to fraud in law upon these plaintiffs. 13 U. S. Dig., Absent, &c., Debtors, 28.

Then the trustees, after the note and mortgage were delivered to them by the principal defendant, held the note and mortgage and property in the nature of a trust, and, without a trustee process, might in equity perhaps

be held accountable to the plaintiff and other creditors, if any. They stand in equity just the same as though they were transferred to any third person. No doubt equity would compel a collection of the note out of the mortgaged property, as the trustee in equity holds the note, and mortgage, and property. Where effects are held by deed by a trustee, yet although the deed be void, yet the process reaches the effects. 4 U. S. Dig., Absent, &c., Debtors, 154.

The plaintiffs say if the trustee process creates a lien upon goods, effects, rights or credits in hands of trustees, and if an attaching creditor stands in the light of a purchaser ; and if an attachment holds a part of a note notwithstanding a sale of a part, then this conclusion must follow. If a purchaser, having purchased this interest in the note, could enforce the collection of it through the mortgage property, then the plaintiff can so do. The action cited of *Burlingame* v. *Bell*, 16 Mass. 318, is a strong authority that it is not the mere personal liability of the trustee that is reached, and that it would not be safe to trust to that, but that the property itself is held by a lien. No other rule would be safe, or just, or equitable.

SARGENT, J. At the time of the service of this writ upon the trustees, the firm of Sides & Jenness were owing the principal defendant a note of eleven hundred dollars, which they had secured by a mortgage of certain horses, carriages and harnesses, which they had purchased of said principal defendant, and for which said note was given ; and it had been arranged between the parties to said note and mortgage, that the trustees, being the mortgagors, should hold possession of and use this property in their business, until they had paid off the claims of Fernald & Son, when they proposed to pay this debt and discharge this mortgage.

The case finds that at the time this writ was served upon the trustees, the property thus mortgaged to the defendants had been taken from their hands. But the plaintiffs claim that it had been wrongfully taken from them, and that they had the right to retake it; or had the means to recover damages for such taking, and that they should be held to do so, and charged accordingly. It may not become material to consider whether the property was taken from the hands of the trustees rightfully or wrongfully. Suppose the property had remained in the hands of the trustees, until after the service of this writ upon them, and had continued with them until the final arrangement between the parties, January 26, 1858, for that would be the most favorable view for the plaintiffs, what rights would the plaintiffs have acquired in or to this property, by virtue of their trustee process? In this case the property was not held by the trustees in pledge or upon mortgage, but they were the pledgors, the mortgagors, holding the property and using it, and having an interest in it—the right to redeem.

But in any case where a man holds property in pledge, or on mortgage, having a lien upon it for the payment of his own debt, or where it is merely deposited with him, and he is trusteed, the plaintiff does not thereby acquire any right to or lien upon the specific property thus in the hands of the trustee. This is settled in *Wolcott* v. *Keith*, 22 N. H. 205; where it is expressly held that the service of the trustee process gave the creditor no right or lien upon the specific property in the hands of the trustee, but would only render him personally liable for its value, in case of any misappropriation of the property by him, or failure to produce and account for it, according to the provisions of the statute.

It is true that, if the property of the principal defendant was in the hands of the trustee, he might have been made liable for the same, or its value; and for that reason the

law would doubtless give him the right to hold the possession against the principal defendant, or any subsequent purchaser or pledgee of the same; and if the specific property had been wrongfully taken from the hands of such trustee, after service of the writ, he would be authorized to bring a suit to recover damages for such wrongful taking, and the proceedings against him may be stayed until such damages may be recovered. *Dispatch Line* v. *Bellamy Manufacturing Company*, 12 N. H. 205. Yet this could only be a power or right personal to the trustee himself, and vested in him alone, but giving to the creditor no right or interest whatever in the specific property itself. And it follows that the trustee would have the right to relinquish or waive such right or lien upon the property, either in favor of the principal debtor, or his pledgee, or any purchaser from him. *Wolcott* v. *Keith, ante.* By this rule, even though the trustee in this case might have had the property of the principal defendant in his hands, he might have done what he pleased with this property, and all that the creditor could do would be to hold him personally responsible for its value. *Brown* v. *Silsbee*, 10 N. H. 521. So that a plaintiff must really in all such cases rely upon the ability of the trustee in the end to respond for the property, as he can acquire no lien upon the specific property itself.

It has been held, to be sure, that the service of the writ upon the trustee who has property or credits of the principal defendant in his hands, is an attachment of the principal defendant's property, so far as to bring the case within the provisions of the statute which provides for proceedings against non-resident debtors, when their property has been attached in this state. Rev. Stat., ch. 186, sec. 5; Comp. Laws 480; *King* v. *Holmes*, 27 N. H. 266; *Young* v. *Russ*, 31 N. H. 201. Yet, although for this purpose the service of the trustee process is considered an attachment of the principal defendant's property, and

although it does give the trustee the right to hold such property as against the defendant, yet the plaintiff acquires no right or lien upon the specific property, but only the right to hold the trustee responsible for the amount of it.

But, in the case at bar, the trustees can not be said to be chargeable on account of holding the defendant's property in possession. The principal defendant, although he had a mortgage of the property, had never foreclosed that mortgage, or demanded payment on his note, or taken possession of the property. He had no attachable interest in the property. *Sissons* v. *Bicknell,* 6 N. H. 557; *Kelley* v. *Burnham,* 9 N. H. 20; *Glass* v. *Ellison,* 9 N. H. 69. All that the plaintiff gained, then, by his trustee process, was to hold the trustees personally responsible for his debt now in suit, on account of their indebtedness to the principal defendant, upon their note to him. For the principal defendant had no attachable interest in the property mortgaged to him, and the plaintiff made no effort to attach it as his; and by the service of this writ upon the trustee he acquired no right to or lien upon it. The trustees, Sides & Jenness, were chargeable to the amount of their note to the principal defendant, at the time of the service of the process upon them, and the subsequent transactions between the parties have not changed their liability; and although Jenness, by his subsequent promise to pay all these partnership debts, has made himself liable to Sides for the performance of that agreement, yet the plaintiffs have no claim upon him alone, but must hold the firm which was indebted to the principal defendant when process was served upon the trustees.

Nor can the plaintiff, by holding the trustees chargeable upon the note, hold the property which they had mortgaged to the principal defendants to secure that note. The only attachable interest in such property, before foreclosure, is the interest of the mortgagor—his right to the

property, subject to the mortgage. This right may be attached, but only on the debts of the mortgagor. A person having a debt against the trustees, might have attached their interest in this property; but there is no provision in our statute authorizing the plaintiff, when he summons a man as the trustee of his debtor, to attach the trustee's property, as security for his being able to respond, in case he should be charged as trustee. So that in any possible view of the subject that we have been able to take, we can not discover that the plaintiff acquired any right to or lien upon this property thus mortgaged, by the service of his writ on the trustee, or on the ground that he holds the trustee chargeable, as indebted to the principal defendant, upon the note which this property was mortgaged by the trustee to secure.

I know that it is held in Massachusetts and in some other states, that the service of the trustee process constitutes a lien, for certain purposes, in favor of the plaintiff, on the specific property of the debtor in the hands of his trustee. *Burlingame* v. *Bell,* 16 Mass. 318; *Platt* v. *Brown,* 16 Pick. 553; *Rockwood* v. *Varnum,* 17 Pick. 289. But it has been distinctly held the other way in this state, as we have already seen, in *Wolcott* v. *Keith;* and, beside, if it had not been so held, the Massachusetts doctrine does not go far enough for this case, as in law, for all the purposes of attachment, this mortgaged property was, as we have seen, not the property of the debtor, but of the trustee.

But it is claimed by the plaintiff that the trustees are to be charged upon another ground; that this note of the trustees which came into their hands, together with the mortgage given to secure it, after the service of the process upon them, is to be treated, so far as creditors are concerned, as an unpaid note and an uncanceled mortgage of some third person, which had come into the trustees' hands, after the service of the process on them, and for which

they should be charged, or, at least, for the $300, which they have never paid, and a receiver appointed to collect said note, by disposing of the mortgaged property, and appropriating the proceeds for that purpose, under the 15th and 16th sections of chapter 208 of the Revised Statutes.

This view can not be sustained, however. The note was either an outstanding note, due from the trustee to the principal defendant, or some assignee of his, or it was a note paid and canceled, and, of course, void. And the same would be true of the mortgage. As to some persons and for some purposes a note may be paid and canceled, while as to other persons and for other purposes it must be treated as unpaid and uncanceled. Suppose the trustees had, after service of the plaintiff's writ on them, gone and paid the defendant the full 'amount' of the note and interest, and taken it up, with the mortgage, and destroyed both, as they did in this case. The transaction would, perhaps, have been honest as to all the world except this plaintiff, but it would have been a fraud upon him and his rights; and, therefore, the whole transaction, as to him, would have been void, and the note would, as to him, be treated as still due and unpaid, and the trustees would be charged as before. Nor does it alter the case that the trustees paid only $800 on the note. The defendant agreed to take that sum in full payment of the note, and he can not now claim that it is not paid. Whether it was all paid, or half paid, or given up without any part being paid, is immaterial; it was all a fraud, as to this plaintiff and his rights, and, as to him, was all void, and left the parties standing, as to him, just as before, leaving the trustees as much chargeable to him for the $800, which they really paid, or procured to be paid, as for the $300, which was not paid. And it would be the same if nothing had been paid.

The entry that the trustee should be charged for the note and mortgage, should not have been made; nor

should any receiver have been appointed, as this case does not come within the provisions of sections 15 or 16 of chapter 208 of the Revised Statutes (Comp. Laws 529), which are the only cases where receivers are provided for by our laws. Sections 18 and 19 of the same chapter contain the only provisions of the statute under which these trustees can be charged. They being indebted, at the time the writ was served, to the principal defendant, upon a promissory note, made and payable in this state, &c., and other parties having been duly notified, and it not appearing that such note had been transferred before the service of said writ on the trustees, and as whatever has been done since such service is merely a fraud, so far as this plaintiff is concerned, and has not changed the relations of parties, nor their liabilities, toward him, judgment is to be rendered against the trustees for the whole amount of the $1100, note and interest, or so much thereof as is necessary to pay this plaintiff's claim against the defendant, which we understand to be a much smaller sum; and as no receiver should have been appointed, and as there is nothing that he can now properly do with the note or the mortgage, or the property mortgaged to secure the note, the plaintiff's motion must be denied. The only proper entry to be made in the case is: Trustees, Sides and Jenness, charged, upon their disclosure, for the full amount of the plaintiff's claim against the principal defendant.